UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SHARON SCHOENUNG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:13-cv-789 |
| | ) | |
| INDIANA BUREAU OF MOTOR | ) | |
| VEHICLES; | ) | |
| COMMISSIONER, Indiana Bureau of | ) | JURY TRIAL REQUESTED |
| Motor Vehicles, in his official capacity; | ) | |
| JOHN DOES, in their individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND
DAMAGES**

**Introductory Statement**

1.      In 2011 Sharon Schoenung voluntarily received inpatient treatment for two weeks for depression and received outpatient counseling for a period of time thereafter.  When she went to renew her driver's license in October of 2012, after she had been discharged by her mental health professional, she was informed that her driver's license had been revoked in 2011 and that, in order to have it returned, she would have to have a mental health professional document that she had the mental capacity and ability to operate a motor vehicle.  When she did so she was informed by the Indiana Bureau of Motor Vehicles ("BMV") that her license would be returned to her for only one year as opposed to the much longer standard period and that within one year she had to present another report from a psychiatrist or her family doctor "addressing if you have remained stable and include all medication(s)," and warning her that if she did not comply her driving privileges would become invalid without further notice.  The actions of the BMV and its

Commissioner and, as of yet, unknown employees within the BMV have violated, and continue to violate, her rights under both the Rehabilitation Act, 29 U.S.C. § 794, and the Americans with Disabilities Act, 42 U.S.C. § 12132.  Appropriate declaratory and injunctive relief should issue and Ms. Schoenung is entitled to her damages as well.

**Jurisdiction, venue, cause of action**

2.      This Court has jurisdiction of this cause pursuant to 28 U.S.C. § 1331.

3.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

4.      Declaratory relief is authorized by 28 U.S.C. §§ 2201, 2201 and Rule 57 of the Federal Rules of Civil Procedure.

5.      This action is brought pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794a(2).

**Parties**

6.      Sharon Schoenung is an adult resident of Franklin County, Indiana.

7.      The Indiana Bureau of Motor Vehicles is an agency of Indiana state government.

8.      The Commissioner of the Indiana Bureau of Motor Vehicles is the duly appointed director of the Indiana Bureau of Motor Vehicles.  He is sued in his official capacity pursuant to Rule 17(d) of the Federal Rules of Civil Procedure.

9.      John Does are, as of yet, an unidentified number of unknown employees of the Bureau of Motor Vehicles who are sued in their individual capacities.

**Legal background**

10.      Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, prohibits a state government, among other public entities, which has received federal financial assistance, from denying benefits to, or discriminating against, an otherwise qualified individual with a disability because

of his or her disability.

11.     For purposes of the Rehabilitation Act, the term "individual with a disability" means a person who has a disability as defined in the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102.  29 U.S.C. §§ 794(a); 705(20).

12.     The ADA has as its purpose:

> (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
>
> (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
>
> (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and
>
> (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C.A. § 12101(b).

13.     As used in the ADA:

> The term "disability" means, with respect to an individual –
>
> > (A)     a physical or mental impairment that substantially limits one or more major life activities of such individual;
> >
> > (B)     a record of such an impairment; or
> >
> > (C)     being regarded as having such an impairment (as described in paragraph(3)).

42 U.S.C. § 12102(1)(C).

14.     Paragraph 3 of 42 U.S.C. § 12102(3) states that:

> For purposes of paragraph 1(C):
>
> > (A)     An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or

mental impairment whether or not the impairment limits or is perceived to limit a major live activity.

(B)   Paragraph 1(C) shall not apply to impairments that are transitory and minor.  A transitory impairment is an impairment with an actual or expected duration of 6 months or less.

15.   Title II of the ADA, 42 U.S.C. § 12131, *et seq.*, specifically concerns public entities and provides, at 42 U.S.C. § 12132, that:

Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

16.   The term "qualified individual with a disability" is defined as:

an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2).

17.   A public entity includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government."  42 U.S.C. § 12131(1)(B).

18.   Congress has stressed that all of these terms are to be interpreted broadly, noting, among other things, that "[t]he definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12103(4)(A),

19.   Federal regulations promulgated by the United States Department of Justice to enforce the ADA state that:

A public entity may not administer a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability, nor may a public entity establish requirements for the programs or activities of licensees or certified entities that subject qualified

individuals with disabilities to discrimination on the basis of disability.

28 C.F.R. § 35.130(b)6).

20.    The regulations also state that:

A public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered.

28 C.F.R. § 35.130(b)(8).

21.    Indiana Code § 9-24-10-7 provides, in relevant part that:

(a)    If the bureau (BMV) has good cause to believe that a licensed driver is:

(1)    incompetent; or
(2)    otherwise not qualified to be licensed;

the bureau may, upon written notice of at least five (5) days, require the licensed driver to submit to an examination.  The bureau also may conduct a reasonable investigation of a driver's continued fitness to operate a motor vehicle safely, including requesting medical information from the driver or the driver's health care sources.

(b)    Upon the conclusion of an examination or investigation under this section, the bureau:

(1)    shall take appropriate action; and
(2)    may:

(A)    suspend or revoke the license of the licensed driver;
(B)    permit the licensed driver to retain the license of the licensed driver; or
(C)    issue a restricted license subject to restrictions considered necessary in the interest of public safety.

(c)    If a licensed driver refuses or neglects to submit to an examination under this section, the bureau may suspend or revoke the license of the licensed driver. The bureau may not suspend or revoke the license of the licensed driver until a reasonable investigation of the driver's continued fitness to operate a motor vehicle safely has been made by the bureau.

22.    Indiana Code § 9-14-4 establishes a Driver Licensing Medical Advisory Board.  Indiana

Code § 9-14-4-4(3) provides that among the duties of the Driver Licensing Medical Advisory Board is "recommending and participating in the review of license suspension, restriction, or revocation appeal procedures, including reasonable investigation into the facts of the matter."

**Factual Allegations**

23.     The BMV is a public entity that receives financial assistance from the United States.

24.     Sharon Schoenung is currently 61 years of age and first received her license to drive from the State of Indiana in 1995.  She was previously licensed in the State of Ohio where she was licensed as a teenager.

25.     Until the events that gave rise to this litigation she had a license continuously and driven without serious incidents.

26.     In 2011, while experiencing significant depression, she drove to Kentucky and received treatment for two weeks as an inpatient during the month of May.

27.     She then returned to her home and received treatment as an out-patient for approximately one year at which time she was discharged. At no time, either when she was an inpatient or outpatient, was any restriction on her ability to drive imposed on her by a mental health professional or by anyone else, nor was her ability to drive safely and properly ever impaired.

28.     Ms. Schoenung's license expired in October of 2012.

29.     During all this time, except for her two week inpatient stay in Kentucky, Ms. Schoenung was driving safely and without incident.

30.     She went to the BMV branch in Brookville, Indiana, to renew her license prior to its expiration.

31.     She was informed by persons at the license branch that her license had been suspended in June of 2011 because, at some point prior to that time the BMV had become aware of her

inpatient stay and, the BMV employee stated, had sent her a request to present evidence that she was a safe driver.

32.     Ms. Schoenung never received any correspondence from the BMV requesting this information.  When she asked for the source of the information the BMV refused to inform her of the source.

33.     In November of 2012, Ms. Schoenung received two pieces of correspondence from the BMV indicating that in order for her driving privileges to be reinstated she and her treating physician had to complete State Form 54747 that sought detailed information about her current medical and mental health condition and how it affected her ability to operate a motor vehicle. Redacted copies of the letters are attached as Attachments 1 and 2.

34.     She first consulted with her former psychiatrist's office about completing the form but the office indicated that the psychiatrist would not complete the form as she was no longer his patient and had not been since May of 2011.

35.     Ms. Schoenung contacted a lawyer with the BMV's principal office in Indianapolis who indicated that she should have her family doctor complete the form.

36.     On November 15, 2012, Ms. Schoenung submitted the form completed by her and her family physician.

37.     However, the BMV rejected the submission and, instead, in a letter dated December 11, 2013, sent Ms. Schoenung a letter specifying that the Indiana Driver's License Medical Advisory Board and the Credential Program Department needed further information and requested that she submit the following information from her "treating psychiatrist."

> 1.  Would the driver's condition affect her safety as well as others, including driving; is the driver's condition stable?
>
> 2.  The psychiatrist's opinion on you being approved for driving privileges; attesting

that you are safe to operate a motor vehicle.

A redacted copy of the letter is attached as Attachment 3.

38.     At that point in time Ms. Schoenung no longer was under the treatment of a psychiatrist or any mental health professional.  She told the BMV attorney this who said that he would look into the matter.

39.     While this was going on Ms. Schoenung had received two 30-day licenses that were effective from November 14, 2012 to December 14, 2012, and from December 13, 2012 to January 12, 2013, and she continued to drive.

40.     On January 12, 2013, the BMV allowed her to renew her license for the regular period of five years and Ms. Schoenung assumed that the matter had been fully resolved.

41.     However, in a letter dated February 7, 2013, from the BMV's Licensing and Credentials Medical/Review Section, she was informed that her license would be invalidated as of March 7, 2013, unless she provided the medical report requested in the BMV's letter of December 11, 2012.  A redacted copy of the February 7, 2013, letter is attached as Attachment 4.

42.     On March 7, 2013, her license was invalidated by the BMV.

43.     Because Ms. Schoenung was no longer under the care of a mental health professional she went to a psychologist for the sole purpose of obtaining a report that would satisfy the BMV. She saw a psychologist in Cincinnati who required that she be interviewed over five sessions. Ms. Schoenung had to pay for these sessions.

44.     In a letter to the BMV dated April 16, 2013, the psychologist rendered his opinion that Ms. Schoenung should be allowed to have her license.

45.     On April 24, 2013, Ms. Schoenung received a letter from the BMV indicating that based on the letter from the psychologist "[i]t is the recommendation of the [Indiana Driver's Licensing

Medical"] Advisory Board that no further action be taken against your driving privileges at this time."  However, the letter further stated that she had to submit "a medical (follow-up) report from your treating psychiatrist or from [ the family doctor] in one (1)  year from the date of this letter, addressing if you have remained stable and include all medication(s).  Failure to comply with this requirement will cause your driving privileges to become invalid without further notice."  A redacted copy of the letter is attached as Attachment 5.

46.     She was not able to drive during this time and as a result had difficulty in, among other things, taking care of her elderly parents who live in Ohio and who she visited regularly.

47.     Although Ms. Schoenung has no impairment that substantially limits one or more of her major life activities, the defendants have imposed burdens and requirements on her as well as excluding her from the benefits of a regular multi-year license because they regard her as having such impairments.

48.     The BMV has administered its licensing program in a manner that subjects Ms. Schoenung to discrimination solely on the basis of her perceived disability and has imposed requirements that subject her to discrimination on the basis of disability and this has caused her damages.  This has been done both intentionally and with deliberate indifference.

49.     The John Does, as of yet unknown employees of the BMV, have intentionally discriminated against Ms. Schoenung because of regarding her as having a disability and have caused her damages.

50.     Ms. Schoenung has had to pay additional expenses because of the defendants' actions and inactions and she has suffered anxiety, embarrassment, inconvenience and other harm and damages.

51.     Plaintiff is also being caused irreparable harm for which there is no adequate remedy at

law.

**Request for jury trial**

52.     Sharon Schoenung requests a jury trial on all claims so triable.

**Legal claims**

53.     The actions of the Indiana Bureau of Motor Vehicles and the Commissioner of the Indiana Bureau of Motor Vehicles, in his official capacity, in imposing additional burdens and requirements on Ms. Schoenung in order to obtain and retain her driver's license violates both the Rehabilitation Act, 29 U.S.C. § 794, and the Americans with Disabilities Act, 42 U.S.C. § 12132.

54.     The intentional discrimination against Ms. Schoenung, and the deliberate indifference shown, by the Indiana Bureau of Motor Vehicles violates the Rehabilitation Act, 29 U.S.C. § 794.

55.     The intentional discrimination against Ms. Schoenung by John Does, as of yet unknown employees of the BMV, violates the Americans with Disabilities Act, 42 U.S.C. § 12132.

**Request for relief**

WHEREFORE, Sharon Schoenung requests that this Court:

1.     Accept jurisdiction of this case and set it for hearing at the earliest opportunity.

2.     Declare that defendants have violated federal law for the reasons noted above.

3.     Award Sharon Schoenung a permanent injunction preventing defendants Indiana Bureau of Motor Vehicles and the Commissioner of the Indiana Bureau of Motor Vehicles, in his official capacity, from engaging in any further actions violating Ms. Schoenung's rights under the Rehabilitation Act and the Americans with Disabilities Act and ordering that she be relieved of any requirement of proving her fitness to drive in one year.

4.     Award Sharon Schoenung her damages under the Rehabilitation Act against the Indiana Bureau of Motor Vehicles and against the John Does under the Americans with Disabilities Act.

5.     Award plaintiff her reasonable attorney's fees and costs pursuant to 42 U.S.C. § 12205 and 29 U.S.C. § 794(b).

6.     Award plaintiff all other proper relief.

/s/ Kenneth J. Falk
Kenneth J. Falk
No. 6777-49
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059  ext. 104
fax: 317/635-4105
kfalk@aclu-in.org

Attorney for Plaintiff